**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND – NORTHERN DIVISION**

----------------------------------------------------------------------X Case No:

THOMAS KNOWLDEN,

*Plaintiff*,

- against -

JOHNS HOPKINS UNIVERSITY,

*Defendant*.

----------------------------------------------------------------------X

**COMPLAINT**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Plaintiff, Thomas Knowlden, by and through his attorneys, FREEDMAN LAW, LLC and WHITE & HILFERTY, hereby complains of the Defendant, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff brings this action alleging that JOHNS HOPKINS UNIVERSITY ("Defendant") unlawfully retaliated against him in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"), and being discriminated against due to his disabilities, being denied reasonable accommodations, and having his employment terminated due to his disabilities and in retaliation for seeking reasonable accommodations under the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't § 20-601 *et seq.* (1984, 2014 Repl. Vol.) ("FEPA").

2. Plaintiff seeks damages to redress his financial and emotional damages that Defendant's unlawful discriminatory and retaliatory practices in violation of federal and state statutes inflicted upon him.

## JURISDICTION AND VENUE

3. Jurisdiction of this Court is proper under , 29 U.S.C. § 2601, and 28 U.S.C. §§ 1331 and 1343.

4. The Court has supplemental jurisdiction over Plaintiff's claims brought under state law pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## PARTIES

6. At all times relevant, Plaintiff Thomas Knowlden ("Plaintiff") was and is a resident of the State of Maryland.

7. At all times relevant, Defendant Johns Hopkins University ("Defendant") is a private research university principally located in Baltimore, Maryland, duly existing pursuant to, and by virtue of, the laws of the State of Maryland.

8. At all times relevant, Plaintiff was a full-time employee of Defendant.

## MATERIAL FACTS

9. At all times relevant, Plaintiff suffered from post-traumatic stress disorder ("PTSD"), severe anxiety, chronic exhaustion, restlessness and additional physical ailments, namely chest pains.

10. Defendant first hired plaintiff in 1994, holding different positions over the course of three decades. On or about November 21, 2022, Plaintiff began working remotely for Defendant as Senior Systems Engineer, providing technical solutions and managing identity data for Defendant's IT department.

11. Plaintiff possessed the necessary qualifications for the position, including 28 years' experience working for Defendant and in healthcare, more than 20 years' experience with

Microsoft SQL, Microsoft Transact-SQL, and writing complex MS SQL procedures, and substantial experience with SQL Server Integration Services.

12. The essential functions of Plaintiff's position were: analysis, design, installation, configuration, and maintenance of software systems; and troubleshooting, documentation, and presentation for Defendant's IT department.

13. Plaintiff's hours were 8:30 a.m. to 5:00 p.m. role, with on-call duties assigned on a rotating basis among team members.

14. Throughout his employment, Plaintiff consistently exceeded expectations and contributed significantly to Defendant's IT operations. For instance, he successfully led the Alma Library System Replacement project, which involved complex data migrations, SQL/ETL processes, and automation tools to improve identity data processing.

15. In fact, on or about December 12, 2023, during an All-Staff Meeting, Defendant's senior leadership publicly acknowledged Plaintiff's work, stating that the Alma Library System Replacement project was "the most complex project that the library ever undertook" and "one of the most complex projects we've [Johns Hopkins has] done."

16. However, everything seemed to change on or about January 4, 2024, when Plaintiff's direct supervisor, Dawn Hayes ("Hayes"), IT Operating Unit Director, abruptly announced during a team meeting that the entire team must be reachable at all times—24/7. This was a drastic and unreasonable shift in job expectations.

17. On or about February 1, 2024, in front of Plaintiff's colleagues—including Anna Frenkel ("Frenkel"), Senior Software Engineer; Corey Kiczula ("Kiczula"), Software Engineer; Zhanna Shapiro ("Shapiro"), Senior Software Engineer; and D'Andre Winder ("Winder"), Software Engineer—Hayes looked directly at Plaintiff and said, "I feel like harassing you."

18. On or about February 28, 2024, during a team meeting, when discussing a complex data cleanup ticket that Plaintiff had voluntarily taken on, Hayes abruptly criticized him for not resolving it within an unofficial one-hour turnaround—an expectation that had never been communicated to Plaintiff.

19. Unfortunately, although Plaintiff tried to comply with the excessive 24/7 demands, the harassment combined with relentless stress and lack of sleep caused Plaintiff to develop PTSD, severe anxiety, chronic exhaustion, restlessness and additional physical ailments.

20. As such, on or about March 7, 2024, Plaintiff met with Hayes during which he explained that the 24/7 on-call requirements over the past two months have severely exacerbated the symptoms of his PTSD and anxiety, and requested, as a reasonable accommodation, to either remove his on-call responsibilities (even if it meant accepting a lower salary) or transfer him to another IT role that did not require on-call responsibilities.

21. However, referring to the new 24/7 requirement, Hayes immediately responded, "I never said that" and in a patronizing and deceptive tone, indicated that Plaintiff did not need to maintain constant availability. When Plaintiff respectfully reminded her that she had mandated 24/7 availability to the whole team, she defensively retorted, "Have we [ever] called you?" Hayes then remarked, "when hearing it from you, it sounds so daunting." Finally, Hayes explicitly denied Plaintiff's request to be relieved of on-call rotation duties, dismissively asserting that such responsibilities were inherent to the role and therefore non-negotiable.

22. On or about April 4, 2024, Plaintiff met with Hayes again and emphasized the severe effect the on-call demands were having on his disabilities. In response, Hayes indicated that having one team member not participating in the on-call rotation would be "mutiny" but nonetheless agreed to give him a six-month break from on-call duty, until October 2024.

23. On or about April 24, 2024, Plaintiff met with Hayes again during which she stated that she spoke with her supervisor, Andy Baldwin ("Baldwin"), IT Enterprise Director, and that there was nothing Defendant could do to permanently remove Plaintiff from on-call duties after the expiration of the six (6) months. Additionally, she suggested that Plaintiff also speak with Baldwin, expressing that he was open to talking and wanted to work things out but warned that, "He's not going to say anything different [than me]."

24. On or about May 2, 2024, after Plaintiff escalated his accommodation request to Regina Daniel ("Daniel"), HR Generalist, she told Plaintiff he could work with the Office of Institutional Equity ("OIE") to request a permanent reasonable accommodation. This was the first time anyone had informed Plaintiff of OIE. Plaintiff expressed confusion, as Hayes and Baldwin had already made it clear that he could not permanently remain in his position without taking on-call duty.

25. That's when Daniel told Plaintiff that she had also spoken to Hayes and Baldwin who stated that permanently removing his on-call duties was not an option. Then, Plaintiff learned something even more alarming—that Hayes and Baldwin had never informed Daniel about his disabilities or repeated accommodation requests. This further showed that Hayes and Baldwin had deliberately withheld critical information to block him from receiving permanent accommodations.

26. From on or about May 7, 2024 through on or about July 30, 2024, Plaintiff was out of work on an approved FMLA leave.

27. On or about July 25, 2024, prior to his return, Plaintiff reached out to Daniel and reiterated that the on-call duties had decimated his health and pleaded that his accommodation be made permanent. Plaintiff also expressed frustration that Hayes and Baldwin had not only ignored

his repeated accommodation requests but had actively withheld his medical concerns from her (i.e., Daniel). Lastly, Plaintiff complained about all the harassment to which Hayes had subjected him based on his disabilities.

28. On or about July 30, 2024, Plaintiff requested from OIE an extension of his leave as an accommodation for his disabilities in addition to requesting that he be provided with the following reasonable accommodations upon his return:

> Released from on-call duties. Granted the opportunity to flex time as needed to accommodate medical appointments. I'm requesting that my work be supervised by another individual, until then I'd like to abstain from meeting with my supervisor without another individual present.

29. On or about August 12, 2024, Plaintiff filed a formal complaint with OIE, detailing how Hayes knowingly disregarded his disabilities, ignored repeated requests for accommodations, and created a hostile work environment based on his disabilities.

30. On or about August 14, 2024, Plaintiff followed up with OIE regarding his request for an additional two (2) months of leave as an accommodation for his disability.

31. On or about August 27, 2024, Plaintiff faxed his completed disability verification forms to OIE and noted that he was requesting "medical leave extension until October 15th."

32. Plaintiff submitted a Disability Verification Form, dated August 26, 2024, on which Janet Glover-Kerkvliet, LCPC ("Glover-Kerkvliet, LCPC"), advised that Plaintiff was diagnosed with Anxiety Disorder, Adjustment Disorder with anxiety and depression, Posttraumatic Stress Disorder, and Sleep Disorder.

33. Plaintiff submitted a second Disability Verification Form, dated August 22, 2024, on which Dr. Amy Byrd, MD ("Byrd, MD") requested that Plaintiff have "no after hours obligations. [Plaintiff] needs to get anxiety under better control."

34. On or about September 9, 2024, Sean Haggerty ("Haggerty"), Assistant Director of Workplace Accommodation, approved Plaintiff's accommodation request, extending his leave through October 15, 2024, but stated that Defendant "will not be able to extend the leave beyond this date."

35. On or about September 10, 2024, Ms. Susan Lee Bathgate ("Bathgate"), Senior Equity Compliance Investigator, OIE, informed Plaintiff via email that "OIE has determined there is insufficient basis that Hayes failed to accommodate you or discriminated against you on the basis of disability."

36. On or about October 1, 2024, Plaintiff provided Defendant with a letter from Glover-Kerkvliet, LCPC reiterating, as an accommodation for his disabilities, Plaintiff's need for an expeditated transfer "to a different position for which [he] is qualified, specifically one that does not involve on-call or after-hours commitments" and "assigning a new supervisor would be beneficial in supporting [Plaintiff]'s health and well-being upon his return to work."

37. On or about October 14, 2024, Plaintiff notified Haggerty that he could not return to the role of Senior Systems Engineer without an accommodation.

38. On or about October 24, 2024, Aaron J. Hodukavich ("Hodukavich"), ADA Compliance Officer, sent Plaintiff an email formally denying his accommodation request for no on-call commitments because the "Sr. Systems Engineer is a senior level position on a small team. The position requires on-call and extended hours commitments because of the significant impact IT outages have on business operations."

39. However, this made no sense, as Defendant accommodated Plaintiff's colleague, Zhanna Shapiro ("Shapiro"), by allowing her to refrain from on-call duties for over a year due to PTSD, establishing that the accommodation was reasonable and showing that removing employees

from on-call rotation does not create an undue hardship or compromise essential business functions.

40. At the same time, OIE also advised that it was in the process of working with Human Resources and Talent Acquisition to inquire about open vacancies for a potential transfer.

41. About a week later, on or about Wednesday, October 30, 2024, Hodukavich notified Plaintiff that Human Resources found three possible job opportunities,[1] and asked Plaintiff to let him know if he would be interested in any of the positions.

42. However, on or about Monday, November 4, 2024, without following up with Plaintiff and before he was even able to respond, Defendant suddenly terminated his employment:

> as a result of ongoing concerns related to you not being able to return to work from leave without pay to your current position. … After a comprehensive review of your request and an evaluation of position vacancies within our department, we have determined that we are unable to meet the requested accommodation without creating a hardship to the IT department. As a result, your last day of employment with Johns Hopkins University will be today, November 4, 2024.

43. Once again, this reason for termination was clearly pretextual, as Defendant is a massive institution with countless IT roles that do not require on-call duties. Transitioning Plaintiff into one of those roles would not have been an undue hardship—it would have been a simple, reasonable solution.

44. Further, prior to terminating his employment, Defendant failed to exhaust the requisite interactive process. While Plaintiff was still considering the positions that Defendant had just sent to him a few days earlier, Defendant abruptly cut off the interactive process and instead terminated his employment.

---

[1] The link to one of the job postings was a dead link, so Hodukavich emailed Plaintiff the corrected link to Plaintiff the following day, Thursday, October 31, 2024.

45. Taking into account the aforementioned, it is clear that Plaintiff was denied an accommodation for his disabilities and thereafter terminated due to his disabilities and in retaliation for requesting an accommodation and taking FMLA leave.

46. Plaintiff has been unlawfully discriminated against, retaliated against, humiliated, and degraded, and as a result, suffers loss of rights, emotional distress, loss of income and earnings.

47. Defendant's actions and conduct were intentional and intended to harm Plaintiff.

48. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails.

49. Defendant's conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

50. Plaintiff seeks damages for lost wages, punitive damages, liquidated damages and attorneys' fees and costs.

**AS A FIRST CAUSE OF ACTION**
**FOR INTERFERENCE AND/ OR RETALIATION UNDER**
**THE FAMILY AND MEDICAL LEAVE ACT**

51. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

52. Defendant's actions against Plaintiff concerned one of the activities protected by the Family Medical Leave Act, 29 U.S.C. § 2601, et seq.

53. The Family Medical Leave Act states, in pertinent part: "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1).

54. Plaintiff exercised his rights pursuant to the FMLA by taking FMLA from May 7,

2024 through July 30, 2024 in order to address and treat PTSD, severe anxiety, chronic exhaustion, restlessness and additional physical ailments, namely chest pains, which was exacerbated by Defendant's discriminatory and retaliatory actions.

55. Plaintiff possessed the necessary qualifications for the position, including 28 years' experience working for Defendant and in healthcare, more than 20 years' experience with Microsoft SQL, Microsoft Transact-SQL, and writing complex MS SQL procedures, and substantial experience with SQL Server Integration Services.

56. Plaintiff was eligible for FMLA leave because, before he requested leave, he had worked for Defendant for at least 12 months and for at least 1,250 hours during the preceding 12-month period of his initial FMLA request.

57. Defendant and/or its agents engaged in an unlawful practice and intended to retaliate against Plaintiff by terminating Plaintiff on November 4, 2024, approximately three months after returning from FMLA leave.

58. Defendant unlawfully "interfered with" and "restrained" Plaintiff's FMLA rights as set forth in preceding paragraphs, culminating in Plaintiff 's termination on November 4, 2024, approximately three months after returning from FMLA leave.

59. As a direct and proximate result of Defendant's unlawful conduct in violation of FMLA, 29 U.S.C. § 2601, et seq., Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits for which he is entitled to an award of monetary damages and other relief.

60. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the FMLA, 29 U.S.C. § 2601, et seq., Plaintiff has suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment,

stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

**AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION**
**UNDER THE MARYLAND FAIR EMPLOYMENT PRACTICES ACT**

61. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

62. Defendant University's discrimination concerned activities protected by MD. Code Ann., State Gov't § 20-606.

63. MD. Code Ann., State Gov't § 20-606(a) provides, in relevant part: "An employer may not: (1) refuse to hire, discharge, or otherwise discriminate against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment because of: (i) the individual's…disability unrelated in nature and extent so as to reasonably preclude the performance of the employment; (2) limit, segregate, or classify its employees…in any way that would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect the individual's status as an employee because of: (i) the individual's… disability unrelated in nature and extent so as to reasonably preclude the performance of the employment…"

64. Plaintiff suffered from a disability recognized by MD. Code Ann., State Gov't § 20-606(a), namely, PTSD, severe anxiety, chronic exhaustion, restlessness and additional physical ailments, namely chest pains.

65. Plaintiff possessed the necessary qualifications for the position, including 28 years' experience working for Defendant and in healthcare, more than 20 years' experience with Microsoft SQL, Microsoft Transact-SQL, and writing complex MS SQL procedures, and substantial experience with SQL Server Integration Services.

66. The essential functions of Plaintiff's position were: analysis, design, installation,

configuration, and maintenance of software systems; and troubleshooting, documentation, and presentation for Defendant's IT department.

67. Plaintiff can perform the essential functions of their position with an accommodation, i.e. being released from on-call duties, granted the opportunity to flex time as needed to accommodate medical appointments, that his work be supervised by another individual, and meeting with his supervisor with another individual present.

68. Plaintiff placed Defendant on notice of their accommodation request on March 7, 2024.

69. Defendant refused to provide said accommodation once placed on notice

70. Defendant and/or its agents engaged in an unlawful practice by discriminating against Plaintiff by failing to make reasonable accommodations to Plaintiff's known physical or mental limitations.

71. As outlined herein, Defendant intended to discriminate against Plaintiff on the basis of his disability as set forth in preceding paragraphs, culminating in Plaintiff 's termination on November 4, 2024.

72. Defendant subjected Plaintiff to adverse employment actions as set forth in preceding paragraphs, culminating in Plaintiff 's termination on November 4, 2024.

73. As a direct and proximate result of Defendant's unlawful conduct in violation of MD. Code Ann., State Gov't § 20-606(a), Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits for which he is entitled to an award of monetary damages and other relief.

74. As a direct and proximate result of Defendant University's unlawful discriminatory

conduct in violation of MD. Code Ann., State Gov't § 20-606(a), Plaintiff suffered and continues to suffer mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

**AS A THIRD CAUSE OF ACTION FOR RETALIATION**
**UNDER THE MARYLAND FAIR EMPLOYMENT PRACTICES ACT**

75. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

76. MD. Code Ann., State Gov't § 20-606(f) prohibits retaliation.

77. MD. Code Ann., State Gov't § 20-606(f) provides, in relevant part: "An employer may not discriminate or retaliate against any of its employees…because the individual has: (1) opposed any practice prohibited by this subtitle; or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subtitle."

78. Defendant's employment practices as alleged at length herein constitute an impermissible act of retaliation in violation of MD. Code Ann., State Gov't § 20-606(f). The stated reasons for Defendant's conduct were not the true reasons but served as a pretext to conceal Defendant's retaliatory animus against Plaintiff.

79. Plaintiff engaged in protected activity on multiple occasions as set forth in the preceding paragraphs, including seeking reasonable accommodations and applying for medical leave.

80. University was aware of Plaintiff's engagements in protected activity as Plaintiff interacted directly with Defendant and its agents in the requests for accommodation and leave.

81. As fully demonstrated within this Complaint, Defendant engaged in a course of retaliatory and adverse conduct against Plaintiff as set forth in preceding paragraphs, culminating in Plaintiff ‘s termination on November 4, 2024.

82. Defendant took these adverse actions shortly after each of Plaintiff's engagements in protected activity.

83. Defendant would not have taken these actions had Plaintiff not engaged in this protected activity.

84. As a direct and proximate result of Defendant's unlawful conduct in violation of MD. Code Ann., State Gov't § 20-606(f), Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits for which he is entitled to an award of monetary damages and other relief.

85. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of MD. Code Ann., State Gov't § 20-606(f), Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

## JURY DEMAND

86. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant:

A. Declaring that Defendant engaged in unlawful employment practices prohibited by the FMLA and FEPA in that Defendant discriminated against Plaintiff on the basis of his disability

and retaliated against him for engaging in protected activities;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant's unlawful discrimination and retaliation and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices, including the awarding of liquidated damages;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action;

F. Awarding statutory interest on all monetary damage awards, verdicts, or judgments; and

G. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

Dated: November 2, 2026

**FREEDMAN LAW, LLC**

/s/ Lindsay A. Freedman
Lindsay A. Freedman
Freedman Law, LLC
10015 Old Columbia Rd, Suite B-215
Columbia, MD 21046
Ph: (410) 290-6232
Email: laf@freedlawfirm.com

**WHITE & HILFERTY, PC**
Michael P. Hilferty (*Pro Hac Vice* Pending)
Samantha E. Hudler (*Pro Hac Vice* Pending)
757 Third Avenue, 20th Floor
New York, NY 10017

Phone: (917) 633 5760
Fax: (646) 690-8897
Email: mph@nycjobattorney.com
Email: hudler@nycjobattorney.com

**PLAINTIFF THOMAS KNOWLDEN**, pursuant to the provisions of 28 U.S.C. 1746, declares the following under penalty of perjury that the foregoing is true and correct:

1. I am the Plaintiff in the above-captioned matter.

2. I have read the foregoing Complaint and know the content thereof, that the same is of my own knowledge except as to the matters therein stated upon information and belief; and that as to those matters, I believe the same to be true.

Executed: Baltimore, Maryland
November 2, 2026

THOMAS KNOWLDEN